Appellants, Waring Inge Holt (Mrs. Holt) and Ellen Inge Trimble (Mrs. Trimble), who are the daughters of Francis H. Inge (Mr. Inge), deceased, filed complaints in the Circuit Court of Mobile County against the First National Bank of Mobile as executor of the estate of Sloss Whitaker Inge (Mrs. Inge), their deceased stepmother. The complaints, one filed by Mrs. Holt and the other by Mrs. Holt and Mrs. Trimble together, sought damages based on Mrs. Inge's alleged wrongful interference with Mr. Inge's intention to devise two parcels of real property to his daughters. The circuit court granted the defendant Bank's motions to dismiss the complaints for failure to state a claim. The daughters appeal, alleging that the trial court erred in dismissing the complaints, which attempt to state a cause of action not yet addressed by the appellate courts of this state. We find, however, that the trial court did not err in holding that these complaints do not state a cause of action, and we affirm.
These consolidated cases have been before this Court twice before. Holt v. First National Bank of Mobile, 372 So.2d 3
(Ala. 1979) (Holt I); Holt v. First National Bank of Mobile,382 So.2d 498 (Ala. 1980) (Holt II). In Holt I, the appeals from the dismissals of the original complaints were dismissed as untimely. In Holt II this Court granted mandamus, ordering the trial court to rule on the Bank's motions to dismiss the amended complaints. The plaintiffs now appeal from the trial court's adverse rulings on these motions. The question of whether the complaints state a cause of action is now properly before us.
In pertinent part, count one of Mrs. Holt's complaint reads as follows:
 "5. Francis H. Inge and Sloss Whitaker Inge were married in September, 1956, and remained married until the death of said Francis H. Inge on April 9, 1959.
 "6. For several months prior to his death Francis Inge had known that he was suffering from cancer in an advanced state.
 "7. Before his death in 1959, Francis H. Inge had formed a fixed intention to devise that certain real property located at 352 Cottage Hill Road in Mobile, Alabama, which he was then occupying as his home, to his daughter, Waring Inge Holt, and this intention would have been carried out but for the wrongful acts of Sloss Whitaker Inge, as hereinafter alleged.
 "8. The Defendant's testator, Sloss Whitaker Inge, by false and fraudulent representations and by the exercise of duress and undue influence, intentionally and maliciously prevailed upon the said Francis Inge to leave the property in a trust which was for her benefit, instead of leaving said property to Plaintiff in a Codicil which he made to his Will.
 "9. Sloss Whitaker Inge fraudulently induced Francis Inge to refrain from leaving the property to his daughter Waring by a Codicil to his Will, but rather to leave it in his residual estate and promised Francis Inge to convey it to Waring.
 "10. Sloss Whitaker Inge was given a full and complete power of appointment of the marital trust property by Article Five of the Last Will and Testament of Francis Inge which allowed her to effectuate such a conveyance if the Cottage Hill Road property were allocated to the marital trust.
 "11. Sloss Whitaker Inge fraudulenty persuaded Francis H. Inge to refrain from executing such Codicil in favor of Waring Inge Holt, and further fraudulently represented to Francis H. Inge that she would give the Francis H. Inge home property to Waring, but within twelve months of the death of Francis H. Inge, and without revealing to Waring the said promise made to her father, said house and real property were sold to Dr. Leon McVay.
 "12. Plaintiff alleges that Sloss Whitaker Inge exercised duress and undue influence, and intentionally and maliciously prevailed upon the said Francis Inge to devise the property to her and that but for such wrongful acts by her, *Page 79 
the Plaintiff, Waring Inge Holt, would have received the property by bequest from Francis H. Inge.
 "13. The Plaintiff, Waring Inge Holt, did not discover the fraudulent and deceitful conduct on the part of Sloss Whitaker Inge until May of 1975, after the death of Sloss Whitaker Inge.
 "14. The Plaintiff, considering the foregoing premises, demands of the Defendant damages in the amount of One Hundred Twenty-Five Thousand and No/100ths ($125,000.00) Dollars, plus interest and costs."
The subsequent counts realleged paragraphs one through thirteen and added grounds for relief as follows: count two, for money had and received from the sale of said property; count three, as third-party beneficiary of an oral pre-marital agreement between Mr. and Mrs. Inge; count four, for Mrs. Inge's misrepresentation of her intention not to convey the said property to Mrs. Holt; and count five, for deceit.
The complaint filed by Mrs. Holt and Mrs. Trimble closely parallels Mrs. Holt's complaint; the following paragraphs will suffice to show the basis of the claim:
 "9. Before his death in 1959, Francis H. Inge expressed an intent to Sloss Whitaker Inge and members of the Inge family to execute a Codicil to his Will by which he would leave certain parcels of property being suitated [sic] within the block in the City of Mobile, Mobile County, Alabama, bounded by Government Street, Claiborne Street, Church Street and Franklin Street, having a front of approximately 125 feet on Claiborne Street and extending in part through to Franklin Street, and known as the Waring property, to his daughters, Waring and Ellen. Francis H. Inge frequently expressed this desire to Sloss Whitaker Inge and members of the Inge family that the parcel of property located in Mobile known as the old Waring property remain in the Inge family.
". . . .
 "11. The Defendant's testator, Sloss Whitaker Inge, by false and fraudulent representations and by the exercise of duress and undue influence, intentionally and maliciously prevailed upon the said Francis Inge to leave his Will unchanged.
 "12. Sloss Whitaker Inge fraudulently persuaded Francis H. Inge and wilfully deceived and induced him by the exercise of duress and undue influence not to leave said property to his said daughters, but instead to leave it in her control and that the old Waring property would be given to Waring Inge Holt and Ellen Inge Trimble by the Will of Sloss Whitaker Inge. Sloss Whitaker Inge did not devise the said Waring property to the Plaintiffs by the Last Will and Testament which she had made prior to her death, and which has been probated, and under which the Defendant is serving."
This first count sought $100,000 damages; the second count sought the same amount for money had and received from sale of the property.
This Court has not addressed the proposed cause of action for tortious interference with an expectancy in an inheritance or bequest. We find that while courts in several other jurisdictions have recognized that such a right of action exists, the cases in which plaintiffs have been successful on appeal have shown more compelling circumstances than those alleged by these plaintiffs.[1]
For the action to lie, the defendant must have used independently tortious means to interfere with the testator's intent. Peffer v. Bennett, 523 F.2d 1323 (10th Cir. 1975); Prosser, The Law of Torts, § 130, p. 951 (4th Ed. 1971). The most glaring example of such a wrongful act can be found inPope v. Garrett, 204 S.W.2d 867 (Tex.Civ.App. 1947). In that case two of the defendants prevented the testatrix from signing her *Page 80 
will in the presence of witnesses, by force or by creating a disturbance. The Court of Civil Appeals of Texas affirmed a judgment imposing a constructive trust against these two defendants who physically interfered with the signing of the will.
In most cases, the wrongful conduct alleged is some species of fraud or deceit, as is the case here. Nevertheless, the plaintiffs whose appeals have succeeded have generally presented much stronger cases than these plaintiffs have alleged. Either the alleged bequest to the plaintiff was in writing, as in Harmon v. Harmon, 404 A.2d 1020 (Me. 1979), andFrohwein v. Haesemeyer, 264 N.W.2d 792 (Iowa 1978), or written evidence of the fraudulent representation existed, as in Whitev. Mulvania, 575 S.W.2d 184 (Mo. 1978); Kramer v. Freedman,272 So.2d 195 (Fla.App. 1973); Allen v. Leybourne, 190 So.2d 825
(Fla.App. 1966); and Mitchell v. Langley, 143 Ga. 827,85 S.E. 1050 (1915). The plaintiff in Bohannon v. Wachovia Bank andTrust Co., 210 N.C. 679, 188 S.E. 390 (1936), did not allege any such writing, but rather that he did not know whether or not his grandfather had written a will in plaintiff's favor and that the defendant, had special access to such knowledge. The Supreme Court of North Carolina held that the complaint stated a cause of action and that the plaintiff should be allowed to question the defendant who was alleged to have special knowledge of the facts. We hold that with no writing alleged and with Mrs. Inge, the alleged defrauder, deceased, the plaintiffs herein have not alleged facts which would bring them within the proposed cause of action.
We are aware that several of the courts in recognizing this cause of action have remarked that the difficulty of proving such a case does not go to the existence of a cause of action. But a line must be drawn somewhere; here, the alleged promise would have been made more than fifteen years before the original complaint was filed, the alleged tortfeasor is dead, and no written evidence of either the intent or the fraud is alleged. Beyond mere difficulty of proof, such an action controverts the policy of several well-established principles of law: the formalities required for testamentary dispositions of property, set out in Code 1975, § 43-1-30; the Statute of Frauds, requiring agreements to make wills and to convey interests in real property to be in writing before such agreements are enforceable, § 8-9-2; statutes of limitations, barring prosecution of stale claims[2]; and the Dead Man's Statute, § 12-21-163, which provides that "no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify . . . as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action. . . ." These policies particularly pose problems here because plaintiffs must prove that Mrs. Inge had no intention of performing the alleged promise at the time she made it. Old Southern Life Insurance Co. v. Woodall,295 Ala. 235, 326 So.2d 726 (1976); Walker v. Woodall, 288 Ala. 510, 262 So.2d 756 (1972); Birmingham Broadcasting Co. v. Bell,259 Ala. 656, 68 So.2d 314 (1953); Code 1975, §§ 6-5-101 and6-5-104 (b)(4). With Mrs. Inge dead, the parties would have to engage in a "swearing match" as to her state of mind twenty-three years ago.
Mrs. Holt and Mrs. Trimble strongly urge that the trial court should be reversed, if only because there exists a presumption that a motion to dismiss for failure to state a claim upon which relief can be granted (A.R.C.P., Rule 12 (b)(6)) should ordinarily not be granted when a plaintiff has alleged a "novel or extreme" cause of action. Roberts v. Meeks, 397 So.2d 111
(Ala. 1981); *Page 81 Lavoie v. Aetna Life and Casualty Co., Inc., 374 So.2d 310
(Ala. 1979); 5 Wright Miller, Federal Practice Procedure § 1957 (1969). The policy behind this practice is to allow development of facts to show whether plaintiffs' case fits within the proposed theory of liability. Because the allegations of the complaints herein show so many countervailing policies, and indeed indicate that a plaintiffs' verdict and judgment would be unsustainable, we decline in this case to follow the above-stated predilection for denying motions to dismiss novel complaints.
Nor do the other counts of plaintiffs' complaints have any merit. The count in each complaint for money had and received would depend upon the plaintiffs' having some right or title to the property, which they clearly did not (even if we were to hold that plaintiffs have an arguable tort action, any injury would be to their expectancy in the devise, not to an actual property right — see Prosser, supra). Mrs. Holt's count alleging that she was a third-party beneficiary to the Inges' pre-nuptial agreement is defeated on its face by the Statute of Frauds. Her counts sounding in fraud and deceit are simply restatements of the primary count and are defeated by the same reasoning as in the analysis above.
For the foregoing reasons, the judgment below is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER and EMBRY, JJ., concur.
ADAMS, J., concurs in the result.
[1] For appellate decisions favorable to defendants, see, e.g.,Cyr v. Cote, 396 A.2d 1013 (Me. 1979); Peffer v. Bennett,523 F.2d 1323 (10th Cir. 1975); Cunningham v. Edward, 52 Ohio App. 61, 3 N.E.2d 58 (1936) (refusing to recognize a cause of action).
See also, annot., 11 A.L.R.2d 808 (1950); Restatement (Second)of Torts § 774B (1977).
[2] Plaintiffs have alleged that they did not learn of Mrs. Inge's promise until after her death, which would bring them within the terms of Code 1975, § 6-2-3, which gives one year to bring an action, otherwise barred, after discovery of fraud. This section does require reasonable diligence and good faith and deems fraud to have been discovered when it ought to have been discovered (see annotations to § 6-2-3). Mr. Inge's daughters have not alleged reasons for their inaction after the reading of his will or the sale of the family house, which occurred within twelve months of his death. At any rate, our point here is simply that the general policy of statutes of limitations would be defeated by trial of this suit.